Jay T. Jambeck, SBN #226018
jjambeck@leighlawgroup.com
Mandy G. Leigh, SBN # 225748
mleigh@leighlawgroup.com
Damien B. Troutman, SBN # 286616
dtroutman@leighlawgroup.com
LEIGH LAW GROUP, P.C.
582 Market Street, Suite 905
San Francisco, CA 94104
Telephone: 415-399-9155
Facsimile: 415-795-3733

Attorney for Plaintiffs
TIDE RISING; A.P.,
a minor, by and through
his Guardian ad Litem; J.P.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIDE RISING, an unincorporated association of parents and guardians; A.P., a minor, by and through his Guardian ad Litem; J.P.<br><br>Plaintiffs,<br>v.<br><br>SEQUOIA UNION HIGH SCHOOL DISTRICT,<br><br>Defendant. | Case No.:<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF FOR:**<br><br>**1. Violation of Title II of the Americans with Disabilities Act;**<br>**2. Violation of Section 504 of the Rehabilitation Act** |

1

COMPLAINT

**I. INTRODUCTION**

1. This is a civil rights action to prevent the Sequoia Union High School District ("District") from dismantling a uniquely successful "Full Inclusion" educational environment that serves the highest concentration of students with disabilities in the District.

2. Under the pretext of "financial distress," the District has abruptly moved to close TIDE Academy ("TIDE"). This decision is not a race-neutral or disability-neutral budgetary adjustment; it is an act of systemic segregation. TIDE serves a student population comprised of 20.2% students who Disabilities—more than double the rate of other District schools.[1]

3. For these students, TIDE's small-school design and cohort model constitute a necessary "Structural Accommodation." It allows students with anxiety, autism, and sensory processing disorders to access the General Education curriculum without the restrictive interventions required in larger settings.

4. The District's decision to close TIDE is akin to the demolition of a ramp into a school. It effectively evicts a protected class from their Least Restrictive Environment (LRE) and forces them into large, 2,000+ student campuses where they will face constructive exclusion or be forced into segregated Special Day Classes.

5. Plaintiffs seek immediate injunctive relief to halt this discriminatory closure and preserve the status quo of access for these qualified individuals.

**II. JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under federal laws: Title II of the Americans with Disabilities

---

[1] All statistics set forth are drawn from the most recent publicly-available data via the 2024 School Accountability Report Cards.

Act ("ADA"), 42 U.S.C. § 12101 et seq., and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

7. Venue is proper in this District under 28 U.S.C. § 1391(b) because the Defendants reside in this District and the events giving rise to the claim occurred in San Mateo County, California.

**III. EXHAUSTION OF ADMINISTRATIVE REMEDIES IS NOT REQUIRED**

8. Plaintiffs are not required to exhaust administrative remedies under the Individuals with Disabilities Education Act (IDEA) because the gravamen of this Complaint is discrimination and systemic exclusion, not the adequacy of an individual student's Individualized Education Program (IEP). *Fry v. Napoleon Community Schools*, 580 U.S. 154 (2017).

9. This action challenges a "Method of Administration," pursuant to 34 C.F.R. § 104.4(b)(4), of the systemic decision to eliminate a school site—rather than an individual placement offer.

10. Furthermore, exhaustion is futile. Plaintiffs seek an injunction preventing the closure of a public school facility. An Administrative Law Judge (ALJ) in a due process hearing lacks the statutory authority to order a School Board to keep a building open. Thus, the administrative process cannot provide the relief sought.

**IV. PARTIES**

11. Plaintiff TIDE RISING is an unincorporated association of parents, guardians, and community members dedicated to preserving equitable access to education at TIDE Academy. Its members include Plaintiffs J.P. and A.P., as well as other parents of students with disabilities who will be directly injured by the closure.

3

COMPLAINT

12. Plaintiff A.P., a minor, by and through his Guardian ad Litem; J.P., a student currently enrolled at TIDE Academy who is a qualified individual with a disability under the ADA. They require a small learning environment to access their education and faces imminent regression if transferred to a comprehensive site.

13. Defendant SEQUOIA UNION HIGH SCHOOL DISTRICT is a public entity and a recipient of federal financial assistance, making it subject to the mandates of Title II of the ADA and Section 504.

14. Any acts or omissions taken by District employees are alleged to have been taken within the scope of their duties as employees for the District and as agents for the District.

## V.   BACKGROUND OF THE PROCESS

**a. Initiation of the Closure Process and Initial Rationales**

15. The process to close TIDE Academy began in earnest in late 2025, following the ratification of a negotiated teacher salary increase on November 5, 2025. On November 12, 2025, the Board of Trustees for the Sequoia Union High School District ("the District") directed the Superintendent to develop a timeline for the potential closure of the school. On November 19 and 20, 2025, during initial "listening meetings" with the TIDE community, Superintendent Crystal Leach explicitly stated that finances were not the reason for considering the closure, framing the issue solely as one of enrollment.

**b. The Shift to Fiscal Justification**

16. Despite these initial assurances, the District's rationale shifted significantly over the subsequent two months. By the Board meeting on December 10, 2025, the District presented its First Interim Budget Report, which showed the District "in the red" following the approval of

the teacher salary increases. By the January 26, 2026 study session, financial considerations had replaced enrollment as the primary justification for the proposed closure. During this session, District staff presented data suggesting the District was projected to dip below the minimum required cash reserves. However, the District failed to provide pro forma financial analyses or comparative budget impact studies demonstrating how closing TIDE would result in material net savings, especially as staff admitted that per-student special education costs—a major budget driver—would simply "shift in location" rather than decrease.

### c. Constructive Closure During Open Enrollment

17. The District's actions during the open enrollment period, which began on October 15, 2025, served to actively depress interest in the school. During the January 26, 2026 session, District staff admitted they were "having to inform families about the potential closure" during school tours and shadowing events. The District further acknowledged that without this self-created "uncertainty," enrollment requests were on track to surpass previous years and could have exceeded 100 students for the upcoming term. By publicly doubting the school's future while enrollment was ongoing, the District engaged in a "constructive closure," deterring prospective families and then citing the resulting "uncertainty" as a justification for the final vote.

### d. Lack of Transparency and Material Omissions

18. Throughout this process, the District has maintained that "there is no predetermined decision as to the 'next' use of the facility." However, the District has withheld responsive records to California Public Records Act (CPRA) requests regarding the financial basis of the closure, and other requests, with a production date set for February 9, 2026—five days *after* the scheduled final vote on February 4, 2026—even though the requests were made on November 16 and 20, 2025. Furthermore, despite the stated "fiscal emergency," the District has not publicly evaluated or

disclosed alternative revenue-generating options, such as leasing the facility, which it is suspected the District has essentially pre-decided to do, nor has it considered lesser-restrictive fiscal alternatives like reducing the District's high-cost administrative overhead. The Board is now poised to vote on a recommendation to close or relocate TIDE Academy on February 4, 2026, based on a record that parents allege is fundamentally incomplete, engineered and procedurally defective.

## VI. FACTUAL ALLEGATIONS

### A. TIDE Academy Functions as a Unique "Full Inclusion" Model

19. TIDE Academy is a small, specialized high school (~200 students, 300 at maximum capacity) designed with "Nucleus" advisory cohorts. This structural design has attracted a disproportionately high number of students with disabilities who struggle in large environments.

20. According to the District's 2023-24 School Accountability Report Cards (SARC), 20.2% of TIDE students were Students with Disabilities. By comparison, Carlmont High School's population was only 9.2% Students with Disabilities, and other high schools are comparable or somewhat higher.

21. TIDE students with disabilities succeed in General Education classrooms because the school's physical environment serves as an implicit accommodation.

22. TIDE Academy is the most accommodating educational environment in the District for students with disabilities.

23. For the Class of 2025, TIDE Academy ranked first among all high schools in the District for the A-G completion rate of its students with disabilities.

24. Approximately 41.18% of TIDE graduates with disabilities met A-G requirements, significantly outperforming the state average of 23.61% and the county average of 30.69%.

25. TIDE maintains a close to 100% cohort graduation rate, tied for the highest in the District, demonstrating the school's unique ability to retain and graduate students who might otherwise fall through the cracks in larger environments.

26. By comparison, students with disabilities at the District's large comprehensive schools, such as Menlo-Atherton (26.47%) and Sequoia (27.12%), achieve A-G completion at substantially lower rates.

27. TIDE Academy's small-school structure is not merely a preference but a structural accommodation that allows neurodivergent students and those with 504 plans to access the general education curriculum.

28. The District's own data acknowledges that large comprehensive schools are "structurally designed" differently and that TIDE provides a personal, closely monitored environment that is difficult to replicate at sites with thousands of students.

29. Testimony from students and parents confirms that TIDE's environment has directly resulted in decreased bullying and improved mental health outcomes for students who struggled in traditional, large-scale educational settings. At the large schools, educators throw up their hands and proclaim kids will be kids while that continuously and historically has meant that disabled students become the target of ridicule and derision.

**B. The Closure Decision Disparately Impacts a Protected Class**

30. Closing TIDE disproportionately burdens the disabled community. While non-disabled students may transfer to comprehensive schools with minimal academic disruption, TIDE's disabled students face a fundamental loss of access.

31. Transferring these students to campuses with 2,000+ students (e.g., Menlo-Atherton or Woodside) removes the environmental accommodation. This will force the District's

IEP teams to place in large part these students in More Restrictive Environments (e.g., Special Day Classes or isolated "quiet rooms") solely to manage the sensory and anxiety-related barriers of the new location.

32. This constitutes a regression on the continuum of placements—moving students from "Full Inclusion" to "Segregation"—caused entirely by the District's administrative choice creating a disparate impact on students with disabilities.

### C. The District's Financial Justification is Pretextual

33. Defendants justify the closure based on "financial distress." This justification is either pretextual or self-created, such as maintaining bloated administrative staff, and then imposing the burden on a weaker class already susceptible to bullying tactics.

34. The District holds a "Positive Certification" with the State of California, indicating it can meet its financial obligations for the current and subsequent two fiscal years.

35. Furthermore, SARC data reveals that TIDE is fiscally efficient in delivering Special Education. TIDE's "Restricted" (Special Education) expenditures per pupil are approximately $5,180, compared to approximately $7,835 at East Palo Alto Academy.

36. TIDE's higher "per pupil" cost is driven entirely by "Unrestricted" overhead (administration, support services), not special education services. This evidences that the school environment *is itself* the reasonable accommodation.

37. By closing TIDE, the District will not save "Restricted" funds; those costs follow the students. Conversely, the closure will likely increase District costs by forcing displaced students into Non-Public School (NPS) placements (costing $75,000+ per year) when they fail in the comprehensive environment.

38. A decision that targets the highest-density disabled population for displacement, based on a financial rationale that ignores the inevitable spike in "Restricted" encroachment costs, is arbitrary, irrational, and evidence of discriminatory intent: forcing the brunt of alleged financial distress onto the backs of disabled families.

39. The District has a pattern and practice of failing to accommodate students with disabilities in the larger schools, whether through Section 504 of the Rehabilitation Act of 1974 or the Individuals with Disabilities Education Act.

40. The District's decision to close TIDE is akin to the demolition of a wheelchair ramp. A school district cannot remove a structural accommodation that provides access for students with disabilities, cite "budget concerns," and offer no equivalent means of access. Just as a district may not eliminate physical accessibility features without providing alternatives, it may not eliminate an educational environment that functions as the sole means by which a subset of students can access the general curriculum.

## VII. CAUSES OF ACTION

### FIRST CAUSE OF ACTION: VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT

(42 U.S.C. § 12132)

41. Plaintiffs re-allege and incorporate the preceding paragraphs.

42. Defendants have denied Plaintiffs the benefits of the District's educational services by eliminating the environmental accommodation required for them to access the curriculum.

43. The closure of TIDE constitutes a policy that has the disparate impact of removing the Least Restrictive Environment for 20% of the student body.

44. TIDE was implemented as a reasonable accommodation to students with disabilities who could not otherwise function in a larger school and where the accommodations offered were inadequate.

45. The District specifically "marketed" the school as a school appropriate for students with disabilities who could not perform at the larger schools. Distributed materials referred to "whole school" supports. Subsequent materials stated: "Small community allows more focus on students who are supported academically and social emotionally with Nucleus, our advisory class and small counselor caseloads."

46. Removing the reasonable accommodation creates a systemic violation of the rights of the disabled students who chose to attend TIDE to receive that accommodation and disparately impacts disabled students causing a denial of equal access.

47. Despite knowledge that TIDE serves a unique, high-needs population, Defendants failed to conduct a standard Budget Advisory Committee review or analyze the disparate impact before voting to close the school. Defendants have acted in a rushed and noncollaborative process revealing a callous disregard to the consequences of closure.

**SECOND CAUSE OF ACTION: VIOLATION OF SECTION 504 OF THE REHABILITATION ACT**

(29 U.S.C. § 794)

48. Plaintiffs re-allege and incorporate the preceding paragraphs.

49. Defendants receive federal financial assistance.

50. Under 34 C.F.R. § 104.4(b)(4), recipients may not utilize criteria or methods of administration that have the effect of subjecting handicapped persons to discrimination.

51. The District's decision to consolidate schools is a "method of administration" pursuant to 34 C.F.R. § 104.4(b)(4) that effectively excludes Plaintiffs from the General Education program by transferring them to environments where they cannot function absent accommodations that are systemically under-provided.

**VIII. PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

A. Issue a Preliminary and Permanent Injunction enjoining Defendants from closing TIDE Academy or dispersing its student body until a plan is in place that guarantees the preservation of the same level of inclusion and environmental accommodation;

B. Declare that the decision to close TIDE Academy violates Title II of the ADA and Section 504 of the Rehabilitation Act;

C. Award Plaintiffs their reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 12205 and 29 U.S.C. § 794a; and

D. Grant such other relief as the Court deems just and proper.

DATED: January 30, 2026

**LEIGH LAW GROUP, P.C.**

By: /s/Jay T. Jambeck
JAY T. JAMBECK
Attorney for Plaintiffs